**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GREE, INC., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> SUPERCELL OY, § <br> § <br> *Defendant*. § | Case No. 2:19-cv-00200-JRG-RSP <br> Case No. 2:19-cv-00237-JRG-RSP <br> Case No. 2:19-cv-00310-JRG-RSP <br> Case No. 2:19-cv-00311-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court are four issues raised during the April 23, 2021 final pretrial conference for the above-captioned matters and two pending motions.[1] The first motion is Plaintiff GREE, Inc.'s Motion to Exclude and Motion *in Limine* Regarding Defendant Supercell Oy's Untimely Non-Infringing Alternative ("Motion to Exclude"). *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, **Dkt. No. 244**. The second motion is GREEs Motion for Clarification Regarding GREE's Motion *in Limine* No. 11, or in the Alternative, Supplemental Motion *in Limine* as to Orders and Issues in the -200 Case ("Motion for Clarification"). *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, **Dkt. No. 249**.

The first pretrial issue is Plaintiff GREE's Motion *in Limine* No. 1, which was previously carried. The second pretrial issue is Defendant Supercell Oy's Motion *in Limine* No. 9, for which counsel for Defendants seek an amendment of language. The third pretrial issue is a renewal of the request for preadmission of DX-1370, which regards Zynga source code. The fourth pretrial

---

[1] The citations in this order are to docket numbers in *GREE, Inc. v. Supercell Oy*, 2:19-cv-00200-JRG-RSP unless identified otherwise.

issue is a request for reconsideration of the pre-admission of DX-0130, the Confidential Settlement Agreement between GREE and Supercell (the "CSA").

### I.     Plaintiff's Motion *in Limine* No. 1

GREE's Motion *in Limine* No. 1 "Motion to Exclude Evidence or Argument of PTAB Proceedings" asks that:

> "Supercell [] be precluded from offering evidence, testimony, opinion, discussion, or attorney argument referencing any proceedings with the United States Patent Trials and Appeals Board ("PTAB") regarding any patents asserted by either party, or any Federal Circuit proceeding resulting from the same, or that any such proceeding has been filed, instituted, denied or otherwise resolved including at least the exhibits listed at Appx. A."

Dkt. No. 186 at 6. GREE argues that such evidence is irrelevant to any issue before the jury and poses a danger of unfair prejudice and jury confusion substantially outweighing probative value. *Id.* at 6–7.

GREE notes that in Case Nos. 2:19-cv-00070-JRG-RSP and 2:19-cv-00071-JRG-RSP, two previous cases between GREE and Supercell, the Court granted Supercell's motion *in limine* on this issue "with the narrow exception of allowing GREE to reference Supercell's 'challenges to GREE's patents' given the relevance in that case to notice and pre-issuance damages." *Id.* at 7. GREE argues that Supercell opposes this motion *in limine* "on the basis that it should be permitted to reference the existence, status, details, and outcome of PTAB and non-final Federal Circuit proceedings between the parties." *Id.* GREE asserts that "there are outstanding decisions on a number of these proceedings" and such information "only stands to improperly influence the jury's presumption of validity and runs afoul of existing precedent." *Id.*

Supercell responds that GREE brings this motion to use the demand letter and litigation history as evidence of willfulness while protecting itself from Supercell's defense that it

proactively sought to invalidate the patent identified in the demand letter. Dkt. No. 206 at 6. Supercell explains that "[o]n September 12, 2016, counsel for GREE sent the CEO of Supercell a demand letter, listing 19 Japanese patents and U.S. Patent Application No. 14/983,984, which matured into U.S. Patent No. 9,597,594. Supercell successfully challenged the validity of this patent before the PTAB." *Id.*

Supercell argues that various claims of the '594 Patent were held invalid by the PTAB and the Federal Circuit affirmed and invalidated further claims and that Supercell should be permitted to "use GREE's admission that the continuation patents are not patentably distinct from the invalid claims of the '594 patent as further evidence that Supercell's belief regarding the invalidity of the patents was well founded and applicable to the continuation patents at issue in the present case." *Id.* at 6–7. Supercell continues, noting that six continuations from the '594 Patent are asserted and GREE "admitted during PTAB proceedings [they] are not patentably distinct from the claims challenged in the IPR." *Id.* at 7. In the time since the briefing on the motions *in limine* were filed, the case has narrowed further and the Court has issued a Report and Recommendation recommending that the asserted patents in *GREE, Inc. v. Supercell Oy*, 2:19-cv-00200-JRG-RSP (the "-200 Case") be found invalid under 35 U.S.C. § 101. Dkt. No. 262.

Supercell further argues that the PTAB proceeding on the '594 Patent is not pending, nor has it been vacated, but rather that the PTAB issued a final written decision and the Federal Circuit affirmed its invalidity finding and found further claims invalid. *Id.* at 8. GREE argued that GREE is not asserting any patent in this case to which a petition is currently instituted at the PTAB, the PTAB decisions as to the Atobe I patents have been remanded by the Federal Circuit, and the '594 Patent related to a different claim scope. Dkt. No. 186 at 7.

At issue is the probative value toward the reasonableness of Supercell's state of mind regarding validity and willfulness and the prejudice and jury confusion caused by introduction of PTAB proceedings and related Federal Circuit proceedings. Notably at issue is the '594 Patent and patents sharing its specification—patents the undersigned recommends are invalid. *See* Dkt. No. 262.

At the pretrial conference, GREE argued that regarding willfulness, Supercell has not disclosed a witness who can say as a subjective matter they believed that the patents are invalid and Supercell has not relied on an opinion of counsel. Supercell argued that the issue came up in corporate representatives Mr. Araki's and Mr. Harper's testimonies.

When asked what Supercell intends to present to the jury about the PTAB proceedings, counsel for Supercell responded with the fact they were instituted, the result at the PTAB where it is relevant, and the Federal Circuit's decision subsequent to that. Supercell also reiterated the belief that the claims invalidated by the PTAB and Federal Circuit are patentably indistinct from the claims asserted in this trial. GREE argued that they are not asserting the '594 Patent in this case, but rather descendant patents with different claims, and that they did not admit the claims were patentably indistinct for § 101 purposes. At the most recent pretrial conference on April 23, 2021, GREE further argued that, aside from the proceedings regarding the patents asserted in the -200 Case, all remaining PTAB proceedings have not been instituted and were filed after lawsuits between GREE and Supercell began.

Between the '594 Patent, its descendant patents, and the history of those patents as previously asserted but now recommended invalid, there is a overwhelming risk of jury confusion, waste of time, and unfair prejudice by admitting all of this evidence in this matter. However,

Supercell should not be completely restricted from presenting any evidence regarding the challenges to the patents in its defense against willfulness.

GREE noted that in Case Nos. 2:19-cv-00070-JRG-RSP and 2:19-cv-00071-JRG-RSP, two previous cases between GREE and Supercell, the Court granted Supercell's motion *in limine* on this issue "with the narrow exception of allowing GREE to reference Supercell's 'challenges to GREE's patents' given the relevance in that case to notice and pre-issuance damages." Dkt. No. 186 at 7. Likewise, at the final pretrial conference on April 23, 2021, counsel pointed to the Order on Pretrial Motions and Motions *in Limine* in the *Hillman* case. *See The Hillman Group, Inc., v. KeyMe, LLC*, 2:19-cv-00209-JRG, Dkt. No. 284 (E.D. Tex. Mar. 30, 2021). In *Hillman*, the plaintiff filed a motion *in limine* restricting parties from referring to an *inter partes* review regarding the patent asserted there. *Id.* at 7. There, "[t]he Court granted this MIL with regard to references to terms such as '*inter partes* reviews,' 'IPR,' 'Patent Trial and Appeal Board,' and 'PTAB.' The Court denied this MIL as to the substantive effect of the IPR proceedings." *Id.*

At the March 23, 2021 pretrial hearing in *Hillman*, during argument on this motion *in limine*, Chief Judge Gilstrap stated:

> I agree that the effect of what happened with the IPR and the partial invalidating of the '446 patent relates to and is relevant to the Defendant's defense to willfulness. We're not going to mention inter partes review or IPR or the Patent Trial and Appeal Board, but that doesn't mean that the substance of what happened can't be presented to the jury in regard to this relevant issue as long as it's simply referenced as having occurred, quote, at the Patent Office. . . . we can avoid the risk of confusion, which is the primary basis for which I exclude references to the IPR – IPR process or the PTAB by simply saying that after the issuance of the patent at issue, there was a subsequent decision at the Patent Office that had this effect. . . . I'm going to grant this motion in limine with regard to a specific reference to an IPR proceeding or the PTAB, but I'm going to deny it as to the exclusion of the substantive effect of those as long as it's allocated to a generic reference to the Patent Office.

*Hillman*, Dkt. No. 281 at 98–99.

Just as the PTAB proceedings in the previous cases between GREE and Supercell were relevant to notice and pre-issuance damages, the proceedings are likewise relevant in the present case to willfulness. However, this matter is distinguishable from *Hillman*. Here, the *inter partes* review of the '594 Patent regards a patent that is not asserted in this case and is related to patents that are being withdrawn due to § 101. *See* Dkt. No. 262. In *Hillman*, the *inter partes* review at issue was a prior challenge of the patent-in-suit. *The Hillman Group, Inc.*, Dkt. No. 261 at 6 and Dkt. No. 267 at 7. Since the patent at issue is not an asserted patent, merely a parent patent of patents being withdrawn, allowing the result of the IPR proceeding at issue here would create confusion that would not have been created in *Hillman*.

Considering the unfair prejudice and jury confusion that would be introduced, the Court finds it proper to restrict Supercell from disclosing the results of these challenges. Between the issue of claim distinctness, patent relationships, and varying standards between District Court, Federal Circuit and PTAB, allowing reference to these results would be improper.

Supercell's activity in seeking to have relevant patents invalidated is relevant evidence to its state of mind. Presenting evidence of this activity, stripped of the complexities and issues caused by disclosing their results to the jury, should be permitted. This is particularly so because the '594 Patent is the one referenced in the pre-suit notice letter relied upon by GREE. Accordingly, the Court **GRANTS-IN-PART** GREE's Motion *in Limine* No. 1 with the limited exception that Supercell may refer to the fact they made legal challenges to the validity of GREE's patents. Although the parties may not "mention *inter partes* review or IPR or the Patent Trial and Appeal Board" or (because the proceeding did not regard a patent currently asserted) the result of the

proceeding, the parties may discuss the fact that Supercell challenged GREE's patents' validity "as having occurred, quote, at the Patent Office." *See Hillman*, Dkt. No. 281 at 98–99.

## II.   Defendant's Motion *in Limine* No. 9

The Court previously identified Defendant's Motion *in Limine* No. 9 as agreed with the language, "Supercell's corporate representative will not testify on direct regarding the affirmative defenses of non-infringement and invalidity and GREE will not play his testimony in response. These matters may be raised on the equitable side to the bench, but not before the jury." Dkt. No. 239 at 6. At the April 23, 2021 pretrial conference, counsel for Supercell sought the amendment of that language, specifically changing the "will not testify" to "may not testify" and changing the "of" to "except."

Supercell's briefing on their motions *in limine* states that after GREE sought a 30(b)(6) deposition concerning the factual bases of Supercell's affirmative defenses, Supercell agreed to provide Mr. Ostler as corporate representative concerning the facts underlying Supercell's affirmative defenses with the exception of non-infringement and invalidity, subject to its objections and responses. Dkt. No. 185 at 16. Supercell then asserts that during Mr. Ostler's deposition GREE's counsel went through each of Supercell's affirmative defenses, including non-infringement and invalidity, and asked Mr. Ostler what each of the affirmative defenses "means" and Supercell's "evidence" supporting each defense. *Id.*

In their response, GREE argued that despite the title of the motion *in limine* Supercell seeks to exclude any and all testimony from Supercell's corporate representative Mr. Ostler regarding Supercell's defenses in this case. GREE stated it "contends that the defenses at issue in his testimony (which do not include non-infringement and invalidity, but rather equitable issues such as injunctive relief or estoppel) are not properly before the jury, and therefore it would only use

7

this testimony if Supercell is permitted to advance these defenses nonetheless." Dkt. No. 205 at 13. GREE also argued that Supercell's characterization of GREE's questioning of Mr. Ostler regarding the factual bases for Supercell's affirmative defenses as "eliciting legal conclusions" is wrong. *Id.*

>At the February 23, 2021 pretrial conference, counsel for Supercell represented as follows:
>
>> [T]his is another one where I believe the parties have reached a resolution, and so specifically the MIL addresses excluding testimony from Supercell's corporate representative. It calls for legal conclusions regarding affirmative defenses. And so, in particular, if you have the briefing, it addresses 30(b)(6) testimony for Supercell's corporate representative, Mr. Ostler, with regard to factual underpinnings of the Supercell's affirmative defenses pled in its answers in the complaint. And he was not designated for the first two affirmative defenses, non-infringement and invalidity. And the remaining affirmative defenses are either pure legal issues or are equitable issues that would be determined by the Court. And so the agreement of the parties is that, from what I understand and agree -- can correct me if I'm wrong -- is that certainly this would not come up with respect to his testimony of non-infringement and invalidity for this topic. And with respect to the other topics, it should not come up at trial. We are not going to be having him testify on direct regarding these affirmative defenses that are equitable, and therefore, they would not intend to play his testimony in response to that.

Dkt. No. 251 at 159–160. In response, counsel for GREE stated, "I just want to make sure we're clear, is that Supercell agrees it's not going to raise these defenses at trial before the jury in any form, whether it's Mr. Ostler or otherwise, but that -- which would then resolve the issue that we don't need to play that testimony." *Id.* at 160. To this the Court stated, "I understand the agreement and that these matters won't come up in front of the jury, that they may come up in the equitable side of it on the defense trial, and that's fine."

Upon review of this transcript, the Court finds that the understanding of the agreement was that Mr. Ostler would not testify before the jury regarding equitable affirmative defenses, since

8

they are not raised before the jury, and accordingly that GREE should not be able to play his testimony in front of the jury either. Accordingly, the Court finds it proper to amend the language in its previous Order on motions *in limine*. It is therefore **ORDERED** that Supercell's corporate representative may not testify on direct regarding the affirmative defenses except non-infringement and invalidity and GREE may not use the deposition of Mr. Ostler, who was not designated on the jury issues of non-infringement and invalidity.

### III. DX-1370

At the March 10, 2021 pretrial conference, the Court sustained an objection to DX-1370 as it is not authenticated. The Court stated that if the case did not go to trial on the following Monday Supercell may re-urge the exhibit after getting authentication information. At the April 23, 2021 pretrial conference, Supercell re-urged the preadmission of DX-1370, asserting that it got the authentication declaration shortly after the March 10, 2021 pretrial conference. GREE maintained their objections notwithstanding the declaration, arguing the declaration was untimely. GREE stated that the declaration was produced on March 16, 2021, but it was still after two pretrial conferences and that Supercell is benefitting from a shifting trial date by getting additional exhibits in the record.

GREE also pointed to the recent an opinion in *Wi-LAN Inc. v. Sharp Electronics Corporation* and argued that on page seven of the decision the Federal Circuit found that third party source code offered to show how a system functioned was inadmissible hearsay notwithstanding a declaration from an employee of the thirty party because the witness attesting to those facts was not qualified because they were not going to testify at trial. *See Wi-LAN Inc. v. Sharp Electronics Corporation*, Case No. 20-1041, Dkt. No. 73 (Fed. Cir. Apr. 6, 2021).

In *Wi-LAN*, Wi-LAN argued that a source code printout constituted a business record admissible under the business records exception to the hearsay rule. *Id.* at 7. Wi-LAN asserted the source code printout was properly authenticated through declarations of the third party's employees. *Id.* at 9. The Federal Circuit held, "We agree with the district court that the declarations could not be used to authenticate the source code printout on the theory that the declarations were a proxy for trial testimony or themselves admissible as business records." *Id.*

The Federal Circuit explained that declarations are typically used at summary judgment as a proxy for trial testimony but that declarations cannot be used for this purpose unless the witness will be available to testify at trial. *Id.* The Federal Circuit stated that under Federal Rule of Civil Procedure 56(c)(2) Wi-LAN was required to "explain the admissible form that is anticipated," which Wi-LAN argued it met by explaining that the declarants were available to testify at trial. *Id.* However, the district court found the opposite since at the district court summary judgment hearing counsel for Wi-LAN responded that Wi-LAN did not "think that [it would be] able to force them to come to trial." *Id.* (citing J.A. 15,398-99). "Wi-LAN thus did not establish that the declarants would be available to testify at trial and, as a result, the declarations could not be used as a substitute for trial testimony." *Id.* (citing *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990)).

Wi-LAN further argued that it properly authenticated the source code printout because the declarations were custodian declarations that were themselves admissible as business records under Rule 803(6). *Id.* at 10. There, Wi-LAN admitted it obtained the source code printout by filing lawsuits against the manufacturers and then dismissing the lawsuits without prejudice after

10

the source code printout and declarations were provided. *Id.* As these were created for the purposes of litigation, the Federal Circuit found them outside the scope of the exception. *Id.*

With respect to availability at trial, Supercell has not shown that the individual that produced the declaration has been made available at trial. Further, Supercell stated at the March 10, 2021 pretrial conference that it has been in constant communication with counsel for Zynga and has been informed that they are working diligently to obtain a custodial declaration to authenticate the source code. Supercell further said that the declaration was being prepared by Zynga at its request. Supercell has not shown that the declaration was created as a business record under Rule 803(6), and Supercell's statements show it was produced specifically for this litigation. Accordingly, the current circumstances are governed by *Wi-LAN*.

With the individual that produced the declaration not available at trial, and the declaration produced for the purposes of litigation and not as a business record under Rule 803(6), the Court finds that DX-1370 is still not admissible.

## IV. DX-0130

DX-0130 is a copy of the Confidential Settlement Agreement between GREE and Supercell (the "CSA") regarding litigation in Japan. Dkt. No. 253 at 2; Dkt. No. 252 at 102. In addition to the request to reconsider the preadmission of DX-0130 made at the pretrial conference on April 23, 2021, GREE has filed a Partial Objection to Pre-Admission of CSA. *See* Dkt. No. 253. The Court preadmitted the CSA as Mr. Bakewell makes argument relying on the CSA and that "a license, prior licenses, between the same parties on very closely related, and, in fact, some of the same patents is tough to exclude." Dkt. No. 252 at 114. With respect to arguments that, while the license is technologically comparable as regarding "closely related and, in fact, some of

the same patents," "Mr. Bakewell doesn't believe that the license is economically comparable", the Court responded:

> If you look at the federal circuit case law, their primary concern is about using other licenses that are not technically comparable. If it's a question of economic comparability, the economists often talk about that and the effect it has one way or the other, and I don't believe that there's any hard and fast law from the Federal Circuit that says that a technically comparable license cannot be used even if the rate is not considered by the expert to be determinative.

*Id.* at 114, 108, 115–16.

In Supercell's response to GREE's Partial Objection to Pre-Admission of CSA, Supercell argues that "GREE's and Supercell's experts opine on the economic comparability of the CSA— each accounting for similarities and differences in the economic circumstances surrounding the CSA." Dkt. No. 258 at 5. Supercell asserts that Dr. Becker provided a detailed discussion of the CSA "followed by multiple adjustments to reflect important differences between the Japanese and U.S. market." *Id.* (citing Dkt. No. 253-2 at ¶¶ 88–99[2]; Dkt. No. 253-3 at ¶ 549). Supercell continues, "Mr. Bakewell also provided his opinions regarding comparability, including opinions as to why the 'U.S. and Japanese markets are informative of or comparable to the incremental value'— particularly in view of Dr. Becker's inflated valuations of the asserted patents." (citing Dkt. No. 253-3 at ¶¶ 544-554).

While Dr. Becker stated that "while I disagree that this license is comparable," Dr. Becker proceeded to provide an analysis of how to make "multiple adjustments to reflect important differences between the Japanese and U.S. market presence of Supercell, differences between the judicial systems with respect to patent damages, translation of any applicable royalty rates into a lump sum, and other factors." *See* Dkt. No. 253-2 at 5. It is these very opinions that Mr. Bakewell

---

[2] The Court notes that Exhibit B only includes ¶¶ 88–95 and part of ¶ 96.

attempts to rebut. *See* Dkt. No. 253-3 at ¶ 552 ("However, Dr. Becker's adjustments are unsound. Below, I describe the "adjustments" Dr. Becker discussed and the countervailing information he disregarded:"). The Court has reconsidered its preadmission of DX-0130 and still considers the preadmission proper.

## V. GREE's Motion to Exclude (Dkt. No. 244)

GREE's Motion to Exclude asks the Court to preclude Supercell, Supercell's counsel, or any of Supercell's witnesses "from mentioning, referring to, or offering any evidence, testimony, or argument at the upcoming trial relating to Supercell's previously undisclosed and untimely non-infringing alternative to the accused "Choose Your Rewards" feature that Supercell first disclosed in a supplemental interrogatory response served on April 14, 2021 . . . ." *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 244 at 2.

GREE asserts that Supercell announced an update to Clash Royale, an accused game, on March 30, 2021 and released it on April 4, 2021. *Id.* at 4. The feature at issue called Wild Cards replaced the accused feature Choose Your Rewards. *Id.* at 2–4. GREE says that Supercell argued that Wild Cards could have been adopted at any time and therefore is a non-infringing alternative. *Id.* at 2. GREE argues that Supercell admitted that the decision to remove the Choose Your Reward feature was made more than three months ago around January 12, 2021, with the idea and planning for the replacement of the feature likely taking place much earlier. *Id.* at 4 (citing *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 244-4). GREE says that Supercell first disclosed this alleged non-infringing alternative in supplemental interrogatory responses served on April 14, 2021. *Id.* at 2.

Supercell responds that "Supercell, for its part, has agreed that it will not present any evidence or argument regarding the Wild Cards feature as an alleged non-infringing alternative."

*GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 255 at 4. However, "[d]espite Supercell's agreement to the very relief requested in GREE's motion, GREE has refused to withdraw its motion" because "GREE now claims that it is seeking to preclude Supercell from referencing the fact that the accused Choose Your Reward feature was removed from Clash Royale and that there was no impact on the user's experience of Clash Royale from the removal of that feature." *Id.*

Supercell asserts that "[d]uring fact discovery, Supercell disclosed that 'Supercell could remove Choose Your Reward . . . from Clash Royale. Th[is] non-infringing alternative would be acceptable, at least because it could be implemented without diminishing a user's experience with Clash Royale.'" *Id.* (citing *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 244-2 at 10–11). Supercell continues, "[i]n the March 2021 Clash Royale update, Supercell did just that: it removed the Choose Your Reward feature, and its removal did not have any impact on the user's experience with Clash Royale, as shown, for example, in the increase in revenue that occurred after that update." *Id.* (citing *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 244-2 at 12).

GREE's Motion to Exclude does not merely regard the concept of a late disclosed non-infringing alternative. GREE's Motion to Exclude regards "a supplemental interrogatory response served on April 14, 2021, long after the close of discovery and just over two weeks before trial." *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 244 at 2. To support Supercell's assertion that Supercell disclosed that Supercell could remove Choose Your Reward from Clash Royale, Supercell cites to this eleventh hour supplemental interrogatory response served long after the close of discovery. *GREE, Inc. v. Supercell Oy*, 2:19-cv-00310-JRG-RSP, Dkt. No. 255 at 4.

14

The Court will not dig through the record to determine whether this argument was previously disclosed at an appropriate time.

If the argument that Supercell could remove Choose Your Reward, the removal being a non-infringing alternative, was disclosed prior to this April 14, 2021 supplement, Supercell may make that argument. What Supercell may not do is use a last minute supplemental disclosure to evidence that when Choose Your Reward was removed "its removal did not have any impact on the user's experience with Clash Royale, as shown, for example, in the increase in revenue that occurred after that update." *See Id.* At this stage, well beyond the end of discovery, GREE has no opportunity to investigate and challenge this assertion. Accordingly, the Court **GRANTS** GREE's Motion to Exclude. It is therefore **ORDERED** that Supercell is are precluded from mentioning, referring to, or offering any evidence, testimony, or argument at the upcoming trial relating to the "Wild Cards" feature. It is further **ORDERED** that Supercell is precluded from mentioning, referring to, or offering any evidence, testimony, or argument at the upcoming trial related to the March 2021 removal of the "Choose Your Rewards" feature.

The Court clarifies that it is not precluding Supercell from arguing that Supercell could remove Choose Your Reward, the removal being an alleged non-infringing alternative, if it was disclosed prior to the April 14, 2021 supplement. The Court's preclusion extends to the actual removal of the "Choose Your Rewards" feature that occurred in March 2021.

**VI.     GREE's Motion for Clarification (Dkt. No. 249)**

GREE's Motion for Clarification requests clarification and confirmation that the Court's order granting GREE's Motion *in Limine* No. 11 precludes both parties from "offering evidence, testimony, argument, or making reference to Case No. 2:19-cv-00200-JRG-RSP . . . ." *GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00310-JRG-RSP, Dkt. No. 249 at 1. GREE specifically asks for

clarification that this preclusion "include[s] but [is] not limited to the Court's Report and Recommendation granting-in-part Supercell's Motion for Summary Judgment of Invalidity for Failure to Claim Patent-Eligible Subject Matter Under 35 U.S.C. § 101 in the -200 Case ('Report') (Dkt. 239) and any other orders in the -200 Case." *Id.* GREE's concern arises as "subsequently, at the pretrial conference on April 23, 2021, counsel for Supercell stated that it intends to reference the Report during trial in the remaining cases. Counsel for Supercell asserted that the Court's Report is relevant to willful infringement." *Id.* at 3.

The Court clarifies that the Court's ruling on GREE's Motion *in Limine* No. 11 includes the Court's Report and Recommendation recommending that the patents asserted in the -200 Case are invalid. As invalid patents cannot be asserted, and the patents were previously asserted, the patents in question "were once asserted and have since been dropped." *See GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00310-JRG-RSP, Dkt. No. 214 at 4. Further, Supercell cannot rely on its motion for summary judgment or any other conduct after the filing of the complaint as a defense to willful infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1933 (2016) (stating with regards to the willfulness of a patent infringer, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct.").

GREE asks for confirmation that the Court's grant of GREE's Motion *in Limine* No. 11 precludes both parties "offering evidence, testimony, argument, or making reference to Case No. 2:19-cv-00200-JRG-RSP . . . ." *GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00310-JRG-RSP, Dkt. No. 249 at 1. The Court clarifies that this includes the Court's Report and Recommendation recommending that the patents asserted in the -200 case are invalid.

## VII. CONCLUSION

The Court **GRANTS-IN-PART** GREE's Motion *in Limine* No. 1. The Court **modifies** the ruling on Defendant's motion in limine No. 9. The Court **SUSTAINS** GREE's objection to DX-1370. The Court **OVERRULES** GREE's objection to DX-0130. The Court **GRANTS** GREE's Motion to Exclude. The Court further **GRANTS** GREE's Motion for Clarification.

**SIGNED this 28th day of April, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE